David B. Shemano (State Bar No. 176020)
*dshemano@pwkllp.com*
Scott F. Gautier (State Bar No. 211742)
*sgautier@pwkllp.com*
Monsi Morales (State Bar No. 235520)
*mmorales@pwkllp.com*
PEITZMAN, WEG & KEMPINSKY LLP
10100 Santa Monica Boulevard, Suite 1450
Los Angeles, CA  90067
Telephone:  (310) 552-3100
Facsimile:  (310) 552-3101

Proposed Counsel to the Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>HOME ORGANIZERS, INC., a Delaware corporation, HOME CLOSETS, INC., a California corporation, CBD FRANCHISING, INC., a California corporation, CLOSETS BY DESIGN, INC., a California corporation, CLOSET WORLD, INC., a Delaware corporation, CLOSET DIMENSIONS, INC., a California corporation, CBD LAS VEGAS LLC, a Nevada limited liability company, and CLOSET WORLD ARIZONA, LLC, a Nevada limited liability company,<br><br>        Debtors. | Case No.: 2:10-bk-19762-RN<br><br>Chapter 11<br><br>(Jointly Administered with Case Nos.: 2:10-19972-RN, 2:10-19973-RN, 2:10-19974-RN, 2:10-19975-RN, 2:10-19976-RN, 2:10-19977-RN and 2:10-19978-RN)<br><br>**NOTICE OF MOTION AND MOTION FOR ORDER APPROVING COMPROMISE AND SETTLEMENT OF:**<br>**(I) MOTIONS TO DISMISS THE CASES OF THE DEBTORS OTHER THAN HOME ORGANIZERS, INC.;**<br>**(II) MOTION FOR RELIEF FROM THE AUTOMATIC STAY IN THE CASE OF HOME ORGANIZERS, INC.; AND**<br>**(III) MOTION OF HOME ORGANIZERS, INC. FOR A TRO AND INJUNCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Declaration of Frank Melkonian to be filed separately]<br><br>Hearing:<br> Date: April 22, 2010<br> Time: 2:30 p.m.<br> Place: Courtroom 1645<br>     255 E. Temple Street<br>     Los Angeles, CA |

**Check One or More as Appropriate:**

| | |
|---|---|
| Affects All Debtors: | ☒ |
| Affects Home Organizers Inc. only: | ☐ |
| Affects Home Closets, Inc. only: | ☐ |
| Affects CBD Franchising, Inc. only: | ☐ |
| Affects Closets By Design, Inc. only: | ☐ |
| Affects Closet World, Inc. only: | ☐ |
| Affects Closet Dimensions, Inc. only: | ☐ |
| Affects CBD Las Vegas LLC only: | ☐ |
| Affects Closet World Arizona LLC only: | ☐ |

**TO THE HONORABLE RICHARD M. NEITER, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTORS' TWENTY LARGEST UNSECURED CREDITORS AND OTHER INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that, on April 22, 2010 at 2:30 p.m., or as soon thereafter as the matter may be heard (the "Hearing"), before the Honorable Richard M. Neiter, United States Bankruptcy Judge, in Courtroom 1645, located at 255 E. Temple Street, Los Angeles, CA, the Bankruptcy Court will consider and act upon the motion (the "Motion") of the debtors in these jointly-administered chapter 11 cases (collectively, the "Debtors") for approval and entry of a proposed Order In Compromise And Settlement Of (I) Motions To Dismiss The Cases Of The Debtors Other Than Home Organizers, Inc., And (II) Motion For Relief From Stay In The Case Of Home Organizers, Inc. (the "Settlement Order"), negotiated by and between the Debtors, on the one hand, and Madison Capital Funding, LLC ("Madison"), on the other hand, to settle the disputes raised in the above-referenced motions.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the declaration to be filed in support of the Motion, the records and files in the above-captioned chapter 11 cases, and such additional evidence and argument as may be presented at or before the Hearing.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the instruction of the Bankruptcy Court, any opposition to the Motion must be filed with the Court and served on counsel for the Debtors and the United States Trustee so as to be received by 9:00 a.m. on April 19, 2010, and the Debtors may respond to any opposition by filing with the Court and serving on the opposing party, or its counsel, if any, a reply so as to be received by 5:00 p.m. on April 20, 2010.

Dated: April 12, 2010          PEITZMAN, WEG & KEMPINSKY LLP


By:_____/s/ Monsi Morales_____
      Monsi Morales
      David B. Shemano
    Proposed Counsel for the Debtors and Debtors in Possession

## MEMORANDUM OF POINTS AND AUTHORITIES

After lengthy and intense negotiations between the Debtors and Madison concerning existing disputes related to the corporate governance of the Debtor entities, and in resolution of the contested matters pending before this Court involving the disputes,[1] the parties agreed upon a proposed form of order designed to resolve consensually the corporate governance conflict and dispose of the contested matters (the "Settlement Order").  The parties presented the material terms of the proposed Settlement Order at the continued hearing on the contested matters on April 7, 2010 at 2:00 p.m.  The Debtors seek approval and entry of the Settlement Order pursuant to Federal Rule of Bankruptcy Procedure 9019.  The Settlement Order should be approved because it resolves the very contentious corporate governance disputes between the Debtors and Madison that created significant obstacles to and delays in the early administration of these cases, allows the Debtors to move forward in these cases toward the confirmation of a plan or a sale of the Debtors' businesses, and eliminates the burden on the Debtors' estates (the "Estates") and the Court that would arise from expending further time and expense in litigating the issues raised, all of which will benefit the Estates and the Debtors' creditors.

## I.

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter relates to the administration of the Debtors' Estates and is accordingly a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).  Venue of this case is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure ("FRBP").

---

[1] Specifically, the matters in dispute were brought before this Court by (a) Madison's motions to dismiss the cases of the Debtors other than Home Organizers, Inc., (b) Madison's motion for relief from the automatic stay in the case of Home Organizers, Inc., and (c) Home Organizers, Inc.'s motion for order determining that Madison's actions violated the automatic stay and for injunctive relief.

## II.

## FACTUAL BACKGROUND

A.    **The Debtors and the Madison Dispute.**

The Debtors are organized as a consolidated corporate group (the "Company") under Home Organizers, Inc. ("HOI"), which acts as a holding company for its subsidiary entities, Closet World, Inc., CBD Franchising, Inc., Closets By Design, Inc., Closet Dimensions, Inc., Home Closets, Inc., CBD Las Vegas, LLC, and Closet World Arizona, LLC (collectively, the "Subsidiary Debtors").  The Company is one of the largest custom closet and other home organization system companies in the United States, with several name brands, a nationwide franchise network, and over 500 employees in California.

In 2004, the Company entered into a lending relationship with Madison.  Currently, the Company is indebted to Madison in the approximate amount of $8 million, which indebtedness is secured by substantially all assets of the Company.  Pertinently, the indebtedness is secured by, among other collateral, a pledge of HOI's equity interest in the Subsidiary Debtors (the "Subsidiary Pledge") and a pledge of Frank Melkonian's equity interest in HOI (the "Parent Pledge," and together with the Subsidiary Pledge, the "Pledges").

In or around 2006, the Company's revenues began to decline due to the approaching economic recession.  In 2009, the Company committed certain events of default under the loan agreement with Madison.  Initially, the Company and Madison attempted to restructure the indebtedness consensually.

Thereafter, on March 9, 2010, Madison gave notice (the "Notice") that it was exercising its purported rights under the Subsidiary Pledge to prohibit HOI from exercising any voting rights with respect to the equity interests in the Subsidiary Debtors until the Company cured all defaults, and that, instead, Madison would exercise the voting rights.  Madison then purported to exercise the voting rights to replace the existing directors of the Subsidiary Debtors with a new director chosen by Madison, Tony Natale ("Natale").  Additionally, on March 9, 2010, Madison sent a notice to Melkonian informing Melkonian that, effective March 23, 2010, Madison intended to exercise its voting rights under the Parent Pledge to remove all existing directors of HOI and elect a single new director selected by Madison.

While the Company disputed that Madison properly exercised rights and remedies with respect to the equity interests and disputes that Natale was properly appointed, the Debtors continued to work in good faith with Madison to reach a consensual resolution. However, on March 16, 2010, in the midst of what the Company believed to be good-faith negotiations to resolve such issues, and without any notice to the Company, Madison obtained a temporary restraining order from a State Court in Cook County, Illinois, that purports to enjoin, among other entities, HOI from exercising any rights or taking any actions inconsistent with (i) the Notice, and (ii) the rights and obligations of Natale, including wrongfully filing, or causing to be filed, a petition for relief under the United States Bankruptcy Code on behalf of the Subsidiary Debtors without the consent of Natale.

**B.    The Bankruptcy Filings**

In order to protect the Company's assets and the interests of creditors other than Madison, on March 16, 2010, HOI commenced its chapter 11 case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. HOI then issued new shareholder resolutions removing Natale as director of the Subsidiary Debtors and reinstating the prior directors. The reinstated directors then authorized the chapter 11 filings for the Subsidiary Debtors. On March 18, 2010, the Subsidiary Debtors each commenced a chapter 11 case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

Further, to ensure Madison could not replace the board of HOI pursuant to its asserted rights under the Parent Pledge, on March 19, 2010, HOI filed a Complaint For (1) Declaratory Relief Concerning Scope Of The Automatic Stay, And (2) Injunctive Relief Enjoining Exercise Of Shareholder Voting Rights Under Pledge Agreement (the "HOI Complaint") against Madison, thereby commencing an adversary proceeding before this Court (Adv. Case No. 2:10-01504-RN) (the "Adversary Action"). Concurrently with the filing of the HOI Complaint, HOI also filed an accompanying Emergency Motion For (1) Order Determining That Creditor's Exercise Of Voting Rights Under Stock Pledge Agreement To Replace Debtor's Board Of Directors Violates The Automatic Stay, And (2) Temporary Restraining Order And Preliminary Injunctions Enjoining Madison Capital Funding, LLC From Exercising Voting Rights Under Stock Pledge Agreement.

Also on March 19, 2010, Madison filed its Motion For Relief From Stay in the HOI chapter 11 case. In addition, on that same date, Madison filed a Motion To Dismiss with respect to each chapter 11 case commenced by the Subsidiary Debtors.

**C.    The Debtors and Madison Reach an Agreement.**

The Debtors and Madison have agreed to settle and compromise the disputes raised in the above-referenced contested matters on the terms and conditions set forth in the Settlement Order, a copy of which is attached hereto as Exhibit A. The principal terms of the Settlement are as follows[2]:

(1)    Subject to the terms and conditions set forth in the Settlement Order, and upon entry thereof by the Bankruptcy Court, Madison has agreed (a) to withdraw its Motions to Dismiss the cases of the Debtors other than Home Organizers, Inc. and Motion for Relief from Stay in the case of Home Organizers, Inc., (b) not to attempt to exercise its asserted rights and remedies under the Pledge Agreements, the Collateral Agreement, or otherwise, to vote the equity interest of any Debtor, and, (c) upon the Release Effective Date, as defined in Section 9(b) of the Settlement Order, to cause the action entitled *Madison Capital Funding LLC v. Home Organizers Inc., CBD Franchising Inc, Home Closets, Inc., et al.*, currently pending in the Circuit Court of Cook County, Illinois, as Case No. 10CH10531, to be dismissed with prejudice.

(2)    With respect to the corporate governance of the Debtors, the Debtors have agreed to a timetable by which they will undertake and accomplish certain actions toward the ultimate consummation of a sale of their businesses no later than July 30, 2010 (the "Sale Milestones"), as set forth in section 2(f)(iii) of the Settlement Order. In the event that the Debtors fail to satisfy the Sale Milestones or another "Board Replacement Event," as described below, occurs, the Debtors and Frank Melkonian, the sole shareholder and principal of Home Organizers, Inc., agree that (a) the directors then serving on the boards of directors of the Debtors organized as a corporation shall be deemed removed and replaced with Natale as the sole director and (b) the limited liability company agreements of the Debtors organized as limited liability companies shall be replaced with limited liability company agreements approved by Natale. "Board Replacement Event" means any one of the

---

[2] The following is a summary of the material terms and conditions of the Settlement Order. In the event any language in the summary provided herein conflicts or differs from the language contained in the Settlement Order, the Settlement Order language shall control. Capitalized terms used herein and not defined shall have the meanings ascribed to them in the Settlement Order.

following:

(a)    the failure of the Debtors to retain Natale (individually or through Shepherd Partners, Inc.) as its chief restructuring officer ("CRO") on or before April 10, 2010, or the failure of the Debtors to retain the CRO until the Prepetition Debt has been paid in full;

(b)    the failure of the Debtors to retain Mesirow Financial or such other nationally recognized investment banker reasonably acceptable to Madison (the "Investment Banker") on terms reasonably acceptable to Madison on or before April 12, 2010, for the sale of the Debtors' businesses as a going concern to be consummated on or before July 30, 2010;

(c)    the failure to satisfy the Sale Milestones, including consummation of a sale of the Debtors' businesses as a going concern by July 30, 2010;

(d)    any intentional breach by any Debtor of the other terms of any cash collateral or financing order entered in any of the cases of the Debtors;

(e)    the filing by any Debtor of a motion seeking or the entry of any order authorizing the use, sale, or other disposition of any property of any Debtor's estate in which Madison has an interest without the written consent of Madison;

(f)    the filing by any Debtor of a motion seeking to obtain, or the entry of any order authorizing financing with liens or administrative priority over the priority of the liens and rights of payment of Madison;

(g)    the filing by any Debtor of a motion seeking confirmation of a plan, or the entry of any order approving any plan, that does not provide for either (i) the payment in full in cash of the Prepetition Debt on or prior to the effective date thereof or (ii) the sale of substantially all of the property of the Debtors' estates, subject to Madison's rights to credit bid under section 363(k) of the Bankruptcy Code;

(h)    the filing by Melkonian, anyone acting in concert with Melkonian, or any of the Debtors of a claim or cause of action against Madison or its collateral seeking to dispute the extent, validity or priority of Madison's asserted secured claims, or the entry of any order disallowing or subordinating the Prepetition Debt to the extent asserted as secured claims by Madison;

(i)    the appointment by the Bankruptcy Court of a trustee for  "cause" under

section 1104(a)(1) of the Bankruptcy Code in any Debtor's case;

(j)    any material misrepresentation by any Debtor in any certificate, report, or financial statement delivered to Madison after the respective filing date of such Debtor;

(k)    termination of any Debtor's exclusive rights to file and seek acceptance of a plan under section 1121 of the Bankruptcy Code;

(l)    conversion or dismissal of any of the Cases without Madison's written consent; or

(m)    the filing by Melkonian or any Debtor of a motion seeking to modify, alter, or amend this Order without the consent of Madison or the entry of any order modifying, altering, or amending this Order.

(3)    The Debtors and Melkonian acknowledge the validity, amount and priority of Madison's claims and liens, subject to the rights of third parties (each, as used herein, a "Challenge Party") to commence any action pursuant to the Challenge Procedure set forth in Section 8(a) of the Settlement Order.

(4)    Subject to the rights of any Challenge Party, each Party releases Madison and the Lenders and Natale, and their respective affiliates and subsidiaries and their respective officers, directors, employees, shareholders, attorneys,  advisors, consultants, agents and representatives as well as their respective predecessors, successors and assigns, from any and all existing claims, counterclaims, rights of offset, obligations, other rights, causes of action, and liabilities, which are based upon, arise under, or are related to the Credit Agreement, the Pledge Agreement, the Collateral Agreement, or any of the other Loan Documents; provided, however, that such release shall not be deemed to constitute a release by any HOI Released Party of  any claim or cause of action to the extent based upon fraud.

In is important to emphasize that the Settlement Order is of limited scope and primarily affects the corporate governance rights of Frank Melkonian, who presently serves as the director of each of the Debtors.  Normally, matters of corporate governance, such as shareholder action or the appointment of directors, are not matters that require the approval of Bankruptcy Court.  The Settlement Order is not binding on third parties and does not restrict the ability of the Debtors to operate in any way.  In the event that a "Board Replacement Event" occurs, the only consequence is

that Madison will have the right to replace Melkonian as the director of the Debtors.  The new board, acting as the debtor in possession, will continue to have the fiduciary duties and obligations of a debtor in possession.  If the new board were to choose a course of action that creditors and other interested parties believed inappropriate, nothing in the Settlement Order would preclude any such a party from seeking appropriate relief from the Bankruptcy Court.

**III.**

**ARGUMENT**

**A.**  **The Court Should Approve The Agreement Pursuant To FRBP 9019 Because It Is In The Best Interest Of The Estates**

Bankruptcy courts may, after the filing of a motion and with notice and the opportunity to request a hearing provided to the estate creditors, approve a compromise or settlement.  FRBP 9019(a).  The Ninth Circuit has long recognized that "[t]he bankruptcy court has great latitude in approving compromise agreements."  *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988).  The purpose underlying a settlement agreement is to avoid the expenses and burdens that are associated with litigating deeply contested and questionable claims.  *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986).  Accordingly, in approving a settlement agreement, the court need not conduct an exhaustive investigation of the claims sought to be compromised.  *See United States v. Alaska Nat'l Bank (In re Walsh Constr., Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982).  Rather, it is sufficient that the court find that the settlement is "fair and equitable," negotiated in good faith and reasonably believed to be the best compromise negotiable under the circumstances.  *See In re A & C Properties*, 784 F.2d at 1381.

In determining whether to approve a compromise pursuant to FRBP 9019, the Ninth Circuit Court of Appeals has identified four factors that indicate whether the settlement is fair and equitable: (1) the probability of success in the litigation; (2) the difficulties, if any, to be encountered in the matters of collection; (3) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and (4) the paramount interest of the creditors and a proper deference to their reasonable views.  *See In re A & C Properties*, 784 F.2d at 1381.  Consideration of these factors does not require the court to determine whether a settlement presented is the best one

that could possibly have been achieved.  Rather, the court need only canvas the issues to determine

whether the settlement falls "below the lowest point in the zone of reasonableness."  *Newman v. Stein*,

464 F.2d 689, 693 (2d Cir. 1972); *In re Pacific Gas & Electric Co.*, 304 B.R. 395, 417 (Bankr. N.D.

Cal. 2004).  Also, although the court should give deference to the reasonable views of creditors,

"objections do not rule.  It is well established that compromises are favored in bankruptcy."  *In re Lee

Way Holding Co.*, 120 B.R. 887, 891 (Bankr. S.D. Ohio 1990); *see also In re A & C Properties*, 784

F.2d at 1384.

        Here, the Settlement Order should be approved because, by consensually resolving the

contested motions, the Debtors can, for the benefit of all parties in interest, move forward with these

chapter 11 cases toward the prompt confirmation of a plan of reorganization or sale of the Debtors'

businesses as a going concern, all of which serve the best interests of the Estates' creditors.  If the

Settlement Order is not approved, the Debtors will be required to litigate each of the contentious

issues raised by Madison, which will indefinitely delay the ability of the Debtors to progress to a plan

or sale process.

**B.**     **The Settlement Order Was Negotiated In Good Faith And Is Reasonably Believed To
Be The Best Compromise Under The Facts**

        The Settlement Order was the result of good faith and arm's-length negotiations between and

among the Debtors, Melkonian and Madison, undertaken in an effort to resolve efficiently and

effectively the host of disputes between the parties raised by the contested matters and enable the

Debtors to move forward with their chapter 11 cases for the ultimate benefit of the Estates and their

creditors.  The Settlement Order is in the best interest of the Estates because, by consensually reaching

an agreement with Madison as to the corporate governance disputes during the very early and critical

stages of administration of these cases, the Settlement Order will allow the Debtors to continue to

operate their business and strategize their reorganization efforts without facing serious and complex

challenges by Madison.

**C.**     **The Settlement Order Is Fair And Equitable**

        The factors promulgated by the Ninth Circuit in *In re A & C Properties* to establish that a

compromise is fair and equitable favor approval of the Settlement Order.  The facts in the Debtors'

bankruptcy cases demonstrate that, after considering (a) the probability of success in the litigation, (b)

the difficulties in collecting on a judgment, (c) the complexity of the disputes and litigation involved, and the expense, inconvenience and delay necessarily attendant to litigation, and (d) the paramount interest of the Estates' creditors, the terms of the Settlement Order are fair and equitable, and approval of the Settlement Order is in the best interest of the Estates.

(i)      The Probability Of Success Is Uncertain.

While the Debtors believe that each of their claims and positions are meritorious, the Debtors are engaged in a number of disputes with Madison, the outcomes of which are uncertain and significantly impact the governance and operation of the Debtors' businesses, as well as the administration of these cases.  For example, the disputes arising from Madison's pre-petition exercise of its asserted voting rights under the Pledge Agreements and Collateral Agreement involve interpretations of complex contractual provisions, as well as state statutory and case law in at least 3 jurisdictions, and the determination of the applicability and impact of the Bankruptcy Code on such disputes, without the benefit of significant authoritative precedent on point.  Given the present circumstances, it is not certain that any determination made with respect to Madison's exercise of its asserted voting rights would be in favor of the Debtors.

(ii)      Difficulties In Collection.

The Debtors' claims against Madison largely relate to Madison's purported exercise of its asserted voting rights and the Debtors' desire to obtain a determination that such exercise constitutes a violation of the automatic stay and an order enjoining any post-petition attempts to further exercise any alleged remedial rights under the Pledge Agreement, the Collateral Agreement, or otherwise. Accordingly, the Debtors are not seeking any damages or other recovery from Madison and, as a result, this factor does not apply in this case.

(iii)      Further Litigation Is Likely To Be Complex, Expensive, Inconvenient And Delay The Efficient Administration Of Debtors' Bankruptcy Cases.

Absent approval of the Settlement Order, the disputes between the parties likely would result in the need to litigate and to resolve multiple complex legal and factual issues through litigation and motion practice, possibly in multiple venues.  The pending contested matters involve complex issues of contractual and statutory interpretation and application, and may require significant factual discovery with respect to the parties' actions and intent throughout the course of their dealings.

Moreover, the matters involve application of provisions of the Bankruptcy Code in the complicated area of corporate law involving parent and subsidiary debtors governed under the laws of several states. This type of dispute and the necessary reconciliation of applicable state and federal law will be difficult, as the case law addressing similar disputes is limited and distinguishable from the facts present in these cases.

Given the complexity of the issues, the necessary interpretation and application of statutory and case law for several states, along with the Bankruptcy Code, and the potential for litigation in multiple venues, complete litigation and resolution of the disputes between the Debtors and Madison likely would take many months, resulting in significant expense to the Estates and delay in the Debtors' reorganization efforts.

(iv)    The Settlement Order Is In The Best Interest Of Creditors.

The Settlement Order provides substantial benefit to the Debtors' creditors because it resolves the pending disputes with Madison concerning the Debtors' corporate governance and disposes of the contested matters consensually and without the need for further litigation. If the Settlement Order is not approved and the litigation and disputes with Madison continue, the Estates likely would face significant and costly litigation with Madison, which ultimately could result in the dismissal of the cases of the Subsidiary Debtors and/or foreclosure by Madison of its interests in the Debtors' assets, to the extreme detriment of the Estates' other creditors. However, if the Settlement Order is approved, the Debtors can focus their attention on the operation of their businesses, efforts to negotiate a successful sale for the benefit of the Estates, and the efficient administration of these chapter 11 cases. Accordingly, the Court should approve the Settlement Order.

## IV.

## CONCLUSION

For the foregoing reasons, the Debtors respectfully request that the Court (1) grant the Motion, (2) enter the Settlement Order, and (3) grant such other and further relief as the Court deems proper.

Date: April 12, 2010              PEITZMAN, WEG & KEMPINSKY LLP

                                  By:    /s/ Monsi Morales              .
                                        Monsi Morales
                                        David B. Shemano
                                  Proposed Attorneys for the Debtors and Debtors in Possession

# EXHIBIT A

David B. Shemano (State Bar No. 176020)
*dshemano@pwkllp.com*
Scott F. Gautier (State Bar No. 211742)
*sgautier@pwkllp.com*
Monsi Morales (State Bar No. 235520)
*mmorales@pwkllp.com*
PEITZMAN, WEG & KEMPINSKY LLP
10100 Santa Monica Boulevard, Suite 1450
Los Angeles, CA  90067
Telephone:  (310) 552-3100
Facsimile:  (310) 552-3101

Proposed Counsel to the Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>HOME ORGANIZERS, INC., a Delaware corporation, HOME CLOSETS, INC., a California corporation, CBD FRANCHISING, INC., a California corporation, CLOSETS BY DESIGN, INC., a California corporation, CLOSET WORLD, INC., a Delaware corporation, CLOSET DIMENSIONS, INC., a California corporation, CBD LAS VEGAS LLC, a Nevada limited liability company, and CLOSET WORLD ARIZONA, LLC, a Nevada limited liability company,<br><br>        Debtors. | Case No.: 2:10-bk-19762-RN<br><br>Chapter 11<br><br>(Jointly Administered with Case Nos.: 2:10-19972-RN, 2:10-19973-RN, 2:10-19974-RN, 2:10-19975-RN, 2:10-19976-RN, 2:10-19977-RN and 2:10-19978-RN)<br><br>**ORDER IN COMPROMISE AND SETTLEMENT OF:**<br>**(I) MOTIONS TO DISMISS THE CASES OF THE DEBTORS OTHER THAN HOME ORGANIZERS, INC.; AND**<br>**(II) MOTION FOR RELIEF FROM THE AUTOMATIC STAY IN THE CASE OF HOME ORGANIZERS, INC.** |

**Check One or More as Appropriate:**

Affects All Debtors: ☒

Affects Home Organizers Inc. only: ☐

Affects Home Closets, Inc. only: ☐

Affects CBD Franchising, Inc. only: ☐

Affects Closets By Design, Inc. only: ☐

Affects Closet World, Inc. only: ☐

Affects Closet Dimensions, Inc. only: ☐

Affects CBD Las Vegas LLC only: ☐

Affects Closet World Arizona LLC only: ☐

Hearing:
Date: April 7, 2010
Time: 2:00 p.m.
Place: Courtroom 1645
    255 E. Temple Street
    Los Angeles, CA

This matter came before this Court on the emergency motions (the "Motions") of Madison Capital Funding LLC ("Madison" or "Agent"): (a) to dismiss each of the cases filed by the Debtors other than Home Organizers, Inc. and (b) for relief from stay in the case filed by HOI; and the parties having agreed to settle and compromise the Motions and related proceedings commenced by HOI on the terms set forth herein.  Unless otherwise indicated, all capitalized terms used as defined terms herein have the meanings ascribed thereto in the Motions.

This Order shall constitute findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 and shall take effect and be fully enforceable as of the filing date for each of the cases of the Debtors.

Having examined the Motions, being fully advised of the relevant facts and circumstances surrounding the Motion, having completed a hearing pursuant to Code[1] §§ 105, 301, 362 and Fed. R. Bankr. P. 2002, and having considered the parties' request to settle and compromise the Motions, and objections, if any, having been withdrawn, resolved or overruled by the Court, **EACH MOTION TO DISMISS AND THE MOTION FOR RELIEF FROM STAY ARE SETTLED TO THE EXTENT SET FORTH HEREIN, AND THE COURT HEREBY FINDS THAT:**

A.    On March 16, 2010, Home Organizers Inc. ("HOI") commenced its chapter 11 case by filing a voluntary petition for relief under chapter 11 of the Code.  HOI is the direct or indirect parent corporation of each of the other Debtors.

B.    On March 18, 2010 (the "Subsidiary Filing Date"), the Debtors (other than HOI) commenced chapter 11 cases by filing voluntary petitions for relief under chapter 11 of the Code.

C.    The Court has jurisdiction to determine its own jurisdiction over the cases and the Motions pursuant to 28 U.S.C. § 157.

D.    On March 19, 2010, Prepetition Agent filed its Motion for Relief from Stay in the Case for HOI. (Case No. 2:10-bk-19762-RN; Docket #13) (the "Motion for Relief").

E.    On March 19, 2010, Prepetition Agent filed a Motion to Dismiss for each of the Cases other than the Case for HOI (collectively, the "Motions to Dismiss").

F.    On March 19, 2010, HOI filed its Complaint for (1) Declaratory Relief Concerning Scope of the Automatic Stay, and (2) Injunctive Relief Enjoining Exercise of Shareholder

---

[1] The United States Bankruptcy Code (11 U.S.C. § 101 *et seq.*), as amended, and any successor statute. Unless otherwise indicated, all statutory section references in this Order are to the Code.

EXHIBIT A
Page 14

Voting Rights Under Pledge Agreement (the "HOI Complaint") and its accompanying Emergency Motion for (1) Order Determining that Creditor's Exercise of Voting Rights Under Stock Pledge Agreement to Replace Debtor's Board of Directors Violates the Automatic Stay, and (2) Temporary Restraining Order and Preliminary Injunctions Enjoining Madison Capital Funding LLC From Exercising Voting Rights Under Stock Pledge Agreement; Memorandum of Points and Authorities (the "HOI TRO Motion"; and together with the HOI Complaint, the "HOI TRO Pleadings").

G.    The Debtors and Madison have agreed to settle and compromise the disputes raised in the Motion for Relief, Motions to Dismiss and HOI TRO Pleadings on the terms and conditions set forth in this Order.

H.    Each member of the Debtors' Board of Directors, including but not limited to Frank Melkonian ("Melkonian"), has submitted personally to the jurisdiction of this Court as a responsible officer and purported director or person in control of the Debtors.

I.    A creditors' committee has not been appointed in these cases.

J.    Under the circumstances of these cases, this Order is a fair and reasonable settlement of the issues presented in the Motions.

K.    An emergency exists to hear and determine the Motions based upon the requirement that the Court determine whether the Debtors have the legal authority to act as debtors-in-possession to operate their businesses during chapter 11 and, among other things, use cash collateral.

L.    The notice provided by Madison of the Motions, the hearing on the Motions, and the entry of this Order satisfy the requirements of Fed. R. Bankr. P. 2002, 4001(a), 9014 and Code §§ 102(1), 105, 301 and 362 and were otherwise sufficient and appropriate under the circumstances.

**WHEREFORE, IT IS HEREBY ORDERED THAT THE MOTIONS ARE SETTLED TO THE EXTENT SET FORTH, AND THAT:**

1.    Pledge Agreements.    The Collateral Agreement, Pledge Agreement and all related security documents shall remain in full force and effect notwithstanding the entry of this Order and any subsequent orders amending this Order or otherwise providing for the use of cash collateral consented to or financing provided by Agent.

2.    Corporate Governance.

(a) Effective upon a Board Replacement Date (defined below) and written acceptance of appointment by Tony Natale ("Natale"), without further order

of this Court, shareholder resolution or other action, (i) the directors then serving on the boards of directors of each of the Debtors organized as a corporation shall be deemed removed and replaced with Natale as the sole director of each such Debtor and (ii) the limited liability company agreements of the Debtors organized as limited liability companies shall be replaced with new limited liability company agreements approved by Tony Natale.  Neither Frank Melkonian nor any other Debtor shall have any right, whether under the Pledge Agreement, Collateral Agreement or otherwise, to exercise shareholder voting rights to replace Mr. Natale as a director.  If Mr. Natale is unable or unwilling to serve as a director, or is sought to be removed by Madison pursuant to an exercise of its voting rights under the Pledge Agreement and Collateral Agreement, then Madison may exercise its rights under the Pledge Agreement or the Guarantee and Collateral Agreement or otherwise, to designate an independent third party to replace Mr. Natale as the director of HOI or any other Debtor organized as a corporation (Mr. Natale or his replacement, the "New Director") without further order of this Court for relief from the automatic stay or otherwise.

(b) Prior to the occurrence of a Board Replacement Date, Madison shall not exercise its voting rights under the Pledge Agreement or the Collateral Agreement or otherwise take action to remove any current member of the board of HOI or any member of the board of any Debtor that may then be serving.

(c) Notwithstanding any exercise by Madison of its rights under the Pledge Agreement, the Collateral Agreement or other related security documents to exercise voting rights to designate such directors and managing members, such designations shall not constitute any "control" by Madison over any of the Debtors and shall not give Madison any right to direct the management or otherwise make any business decisions of the Debtors, all such rights

being exercised by such replacement director and managing member in accordance with his or its fiduciary duties and applicable law.

(d) From and after the date Agent designated Natale as director of one or more of the Debtors through and including the date hereof and upon the date of appointment of the New Director, Natale and the New Director, as applicable, shall be entitled to all indemnification and exculpatory provisions under each of the Debtor's organizational documents and shall be entitled to obtain customary and reasonable directors' and officers' insurance as a permitted use of cash collateral of the Debtors.

(e) In consideration for and in reliance upon the provisions of this Order and in settlement of the Motions to Dismiss and Motion for Relief, (i) Madison agrees to adjourn the Motions to Dismiss and the Motion for Relief *sine die* and to withdraw the Motions to Dismiss and Motion for Relief upon the date this Order becomes a final, non-appealable order and (ii) HOI agrees to adjourn the HOI TRO Pleadings *sine die* and to withdraw and dismiss the HOI TRO Pleadings upon the date this Order becomes a final, non-appealable order.  Upon the date this Order becomes a final, non-appealable order, Natale shall be deemed to not be or ever have been a director of any of the Debtors unless and until Natale is designated as a New Director in accordance with this Order or other applicable law and Natale accepts such appointment in writing.

(f) For purposes of this Order:

(i)    "Board Replacement Date" means the date of occurrence of a Board Replacement Event and delivery of notice from Agent to the Debtors of its election to declare a Board Replacement Event;

(ii)    "Board Replacement Event" means, prior to Madison receiving indefeasible payment in full in cash of the

EXHIBIT A
Page 17

Prepetition Debt (as defined in the Credit Agreement)
(which payment Madison shall accept if good and
immediate available funds are wire transferred to Madison
by any one or more of the Debtors or Melkonian), the
earliest to occur of the following:  (a) the failure of the
Debtors to retain Natale (individually or through Shepherd
Partners, Inc.) as its chief restructuring officer ("CRO") on
or before April 10, 2010, on terms and conditions in
substantially the form provided by CRO to Agent and the
Debtors contemporaneously with the entry of this Order,
or the failure to retain the CRO on such terms until the
Prepetition Debt has been paid in full in cash; (b) the
failure of the Debtors to retain Mesirow Financial or such
other nationally recognized investment banker reasonably
acceptable to Agent (the "Investment Banker") on terms
reasonably acceptable to Agent on or before April 12,
2010, for the sale of the Debtors' businesses as a going
concern to be consummated on or before July 30, 2010, or
the failure of the Investment Banker or the Debtors to
satisfy the Sale Milestones (defined below), (c) any
intentional breach by any Debtor of the other terms of any
cash collateral or financing order entered in any of the
cases of the Debtors, (d) the filing by any Debtor of a
motion seeking or the entry of any order authorizing the
use, sale or other disposition of any property of any
Debtor's estate in which Agent has an interest without the
written consent of Agent, (e) the filing by any Debtor of a
motion seeking to obtain, or the entry of any order

EXHIBIT A
Page 18

authorizing financing with liens or administrative priority over the priority of the liens and rights of payment of Agent, (f) the filing by any Debtor of a motion seeking confirmation of a plan, or the entry of any order approving any plan, that does not provide for either (1) the payment in full in cash of the Prepetition Debt on or prior to the effective date thereof or (2) the sale of substantially all of the property of the Debtors' estates, subject to Agent's rights to credit bid under Code § 363(k), (g) the filing by Melkonian, anyone acting in concert with Melkonian, or any of the Debtors of a claim or cause of action against Agent or its collateral seeking to dispute the extent, validity or priority of Agent's asserted secured claims, or the entry of any order disallowing or subordinating the Prepetition Debt to the extent asserted as secured claims by Madison as described in Paragraph 7 below, (h) the appointment by the Bankruptcy Court of a trustee for "cause" under Code § 1104(a)(1) in any Debtor's case, (i) any material misrepresentation by any Debtor in any certificate, report or financial statement delivered to Agent after the respective filing date of such Debtor, (j) termination of any Debtor's exclusive rights to file and seek acceptance of a plan under Code § 1121, (k) conversion or dismissal of any of the Cases without Madison's written consent, (l) the filing by Melkonian or any Debtor of a motion seeking to modify, alter or amend this Order without the consent of Agent or the entry of any

order modifying, altering or amending this Order, and (m)

July 30, 2010;

(iii)    "Sale Milestones" means in connection with the sale of

the Debtors' businesses: (a) prior to April 30, 2010, the

Debtors shall have provided all reasonable assistance to

permit Investment Banker's preparation and distribution to

third parties of a teaser letter for the sale of the Debtors'

business, (b) prior to April 30, 2010, the Debtors shall

have provided all reasonable assistance to permit

Investment Banker's preparation and distribution of an

offering memorandum to third parties, (c) prior to May 28,

2010, the Investment Banker shall have received one or

more letters of intent for the purchase of the Debtors'

businesses, without financing or due diligence

contingencies and for an all cash purchase price, (d) prior

to June 25, 2010, Debtors shall have filed one or more sale

motions or joint plan of reorganization, providing for the

sale of the Debtors' businesses in accordance with an asset

purchase agreement reasonably satisfactory to Agent (the

"APA"), subject to higher and better offers, (e) prior to

July 22, 2010 the Debtors and the Investment Banker shall

have conducted an auction in connection with the APA, (f)

prior to July 29, 2010, the Debtors shall have obtained an

order authorizing such sale or approving such plan of

reorganization and (g) prior to July 30, 2010, the Debtors

shall have consummated such sale and remitted the

proceeds to Agent in satisfaction of the Prepetition Debt in

accordance with the applicable sale order or order confirming such plan of reorganization.

3.     Intentionally Omitted.

4.     Modification of Stay.  The automatic stay of Code § 362 is hereby modified with respect to Agent to the extent necessary to effectuate the provisions of this Order, including, after the Board Replacement Date, to permit Agent to exercise its voting rights to replace the board and managing member of each Debtor as provided herein.

5.     No Waiver.    Except as expressly provided in the Acknowledgment, Reaffirmation and Release Agreement of even date herewith, Agent shall not be deemed to have suspended or waived any of their rights or remedies under the Pledge Agreement, Collateral Agreement, related documents and applicable nonbankruptcy law (including its rights against any person or party who acted in violation of the TRO) unless such suspension or waiver is in writing, signed by a duly authorized officer of Agent.  No failure of Agent to require strict performance by Melkonian or the Debtors (or by any Trustee) of any provision of this Order shall waive, affect or diminish any right of Agent thereafter to demand strict compliance and performance therewith, and no delay on the part of Agent in the exercise of any right or remedy shall preclude the exercise of any right or remedy.

6.     Survival.  The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with, any order which may be entered in the Debtors' cases: (a) confirming any chapter 11 plan, (b) converting any case to a case under chapter 7 of the Code, (c) dismissing any case, (d) withdrawing of the reference of any case from this Court, or (e) providing for abstention from handling or retaining of jurisdiction of any of the cases in this Court.  The terms and provisions of this Order shall continue in full force and effect until all of the Prepetition Debt has been paid in full in cash and discharged.

7.     Stipulations as to Allowance of Madison's Asserted Secured Claims.

Subject to Paragraph 8(a) of this Order, Debtors and Melkonian admit, stipulate and agree that:

(a) the Credit Agreement and the Loan Documents (as defined in the Credit Agreement) (together with the Credit Agreement, the "Prepetition Documents") evidence and govern the Prepetition Debt, the asserted liens and security interests (the "Prepetition Liens") in all "Collateral" (as defined in the Credit Agreement) and the prepetition financing relationship between Debtors, Agent and the other lenders party to the Prepetition Documents from time to time (the "Prepetition Lenders");

(b) the Prepetition Debt constitutes the legal, valid and binding obligation of Debtors, enforceable in accordance with the terms of the Prepetition Documents;

(c) as of the Subsidiary Filing Date, Debtors are liable for payment of the Prepetition Debt, and the Prepetition Debt shall be an allowed secured claim in an amount not less than $8,107,602 (as of March 12, 2010, exclusive of accrued and accruing Allowable 506(b) Amounts);

(d) no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to contest, objection, recoupment, defense, counterclaim, offset, avoidance, recharacterization, subordination or other claim cause of action or challenge of any nature under the Code, under applicable non-bankruptcy law or otherwise;

(e) the Prepetition Liens are first priority, properly perfected, valid and enforceable security interests, which are not subject to any claims, counterclaims, defenses, setoff, recoupment or deduction, and which are otherwise unavoidable and not subject to recharacterization or subordination pursuant to any provision of the Code, any agreement, or applicable nonbankruptcy law and secure payment of all of the Prepetition Debt;

(f) for purposes of Code §§ 506(b), 507(c) and 507(b) and Fed. R. Bankr. P. 3012, as of the Subsidiary Filing Date, the value of the the Collateral was

not less than $9,000,000; provided, however, that nothing herein shall prejudice Agent's and any Prepetition Lender's right to later: (1) assert that their respective interests in the Collateral lack adequate protection; and (2) seek a different valuation of the Collateral.

8.    Reservation of Rights; Bar of Challenges and Claims.    The stipulations and representations contained in this Order shall be binding on all Challenge Parties, unless and solely to the extent that (i) the Debtors receive notice of a potential Challenge during the Investigation Period from any Challenge Party and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed Challenge.

(a)    Challenge Procedure.  During the Investigation Period, a Challenge Party shall be entitled to determine whether a basis to assert a Challenge exists. If a Challenge Party identifies a basis to assert a Challenge, it must notify the Debtors during the Investigation Period of its demand that the Debtors initiate an action or adversary proceeding relating thereto and from the date that the Debtors are so notified, the Debtors shall have five (5) days to notify the Challenge Party of whether the Debtors intend to initiate such action and ten (10) days to initiate such action.  Nothing herein shall be deemed to grant standing in favor of any Challenge Party absent further order of this Court.  The Debtors, if timely notified of a potential Challenge, shall retain authority to prosecute, settle or compromise such Challenge in the exercise of their business judgment and subject to any applicable further order of court.

(b)    Bar of Challenges and Claims.  If the Debtors do not receive notice of a potential Challenge during the Investigation Period (or such later date as agreed in writing by Agent or by an order of this Court for cause shown), without further order of the Court, (1) the claims, liens and security interests of the Agent and the Lenders shall be deemed to be finally allowed for all purposes in these cases and shall not be subject to

-11-

challenge by any party in interest as to extent, validity, priority or otherwise, and (2) the Debtors and their estates shall be deemed to have waived, released and discharged Agent, Lenders, Natale and their respective officers, directors, members, principals, agents, attorneys, consultants, predecessors in interest, and successors and assigns of and from any and all claims and causes of action, indebtedness, and obligations, of every type, which occurred on or prior to the date of entry of this Order with respect to or in connection with the Prepetition Debt and/or the Prepetition Documents or otherwise.

(c)    For purposes of Paragraphs 7 and 8 this Order:

(i)    Allowable 506(b) Amounts" means, to the extent allowable under Code § 506(b), interest at the default rate of interest as set forth in the Credit Agreement, all fees, costs, expenses, and other charges due or coming due under the Prepetition Documents or in connection with the Obligations (regardless of whether such fees, costs, interest and other charges are included in any cash collateral budget), and all costs and expenses incurred by Agent and Prepetition Lenders before, on, or after the Filing Date in connection with: (a) the negotiation, preparation and submission of this Order and any other order or document related hereto, (b) the Motion for Relief, the Motions to Dismiss (including the Illinois Action) and the HOI TRO Pleadings, including without limitation the costs and expenses, if any, incurred by Agent with respect to Natale in his capacity as the putative director of certain of the Debtors as appointment by Madison prior to the Filing Date (including any counsel retained by or on behalf of Natale acting in such capacity), and (b) the representation of Agent and Prepetition

Lenders in the Debtor's cases, including in defending any

Challenge.

(ii)  "Challenge" means any claim or cause of action challenging the

extent, validity, perfection, priority or enforceability of the

Prepetition Liens or any other claims or causes of action against

Agent or Prepetition Lenders, which may be commenced in

accordance with Paragraph 8(a) of this Order.

(iii)  "Challenge Party" means any creditors committee, any trustee, or

other party-in-interest with the requisite standing, but excluding

any Debtor, Frank Melkonian and any "relative" of his and

excluding any "insider" or "affiliate" of any Debtor and any

insider of an affiliate of any Debtor, as each quoted term is

defined in Code § 101.

(iv)  "Credit Agreement" means that certain Credit Agreement dated as

of June 30, 2004, by and among the Debtors, Agent and

Prepetition Lenders, as amended, modified and supplemented

from time to time.

(v)  "Investigation Period" means the period from the Subsidiary

Filing Date until the date that is the earlier of (1) seventy-five (75)

days after the Subsidiary Filing Date, and (2) sixty (60) days after

the date that a creditors' committee is formed, in each case plus

ten (10) additional days if and to the extent a Challenge Party

delivers timely notice of a Challenge pursuant to Paragraph 8(a)

of this Order.

(vi)  "Prepetition Debt" means (a) All indebtedness or obligations

under the Prepetition Documents as of the Subsidiary Filing Date,

including all "Obligations" (as defined in the Credit Agreement),

and all fees, costs, interest, and expenses as and when due and

payable pursuant to the Prepetition Documents, <u>plus</u> (b) all

Allowable 506(b) Amounts.

9.    <u>Releases</u>.

    (a)    <u>Release of Madison Released Parties</u>.  Subject to Paragraph 8 with

respect to the rights of any Challenge Party, each Party hereby releases

Agent and the Lenders and Natale and their respective affiliates and

subsidiaries and their respective officers, directors, employees,

shareholders, attorneys, advisors, consultants, agents and representatives

as well as their respective predecessors, successors and assigns (the

"Madison Released Parties") from any and all claims, counterclaims,

rights of offset, obligations, other rights, causes of action, and liabilities,

of whatever kind or nature, whether known or unknown, whether

foreseen or unforeseen, arising on or before the date hereof, which such

Party ever had, now has or hereafter can, shall or may have for, upon or

by reason of any matter, cause or thing whatsoever, which are based

upon, arise under or are related to the Credit Agreement, the Pledge

Agreement, the Guarantee and Collateral Agreement, or any of the other

Loan Documents; <u>provided, however</u>, that nothing contained in this

Paragraph 9(a) shall be deemed to constitute a release by any HOI

Released Party of any claim or cause of action to the extent based upon

fraud.  Notwithstanding anything in this Paragraph 9 to the contrary,

nothing in this Paragraph 9 shall be deemed to constitute any Party's

release of (i) SKM EQUITY FUND III, L.P. a Delaware limited

partnership; (ii) SKM INVESTMENT FUND, a Delaware general

partnership; (iii) SKM GROWTH INVESTORS, LLC, a Delaware

limited liability company, (iv) SKM INVESTMENT FUND II, a general

partnership, (v) PARALLEL INVESTEMENT PARTNERS, L.P., a

Delaware limited partnership, (vi) APAX PARTNERS, a Delaware

-14-

limited partnership, (vii) APAX PARTNERS, L.L.C., a Delaware limited

liability company, (viii) APAX PARTNERS, INC., a Delaware

corporation, (ix) SKM GROWTH INVESTORS, L.P., a Delaware

limited partnership, (x) any affiliates of (i) through (ix) above

(collectively, the "Excluded Parties"); or (xi) any of the officers,

directors, employees, shareholders, members, agents and representatives

as well as their respective successors and assigns, of any of the Excluded

Parties.

(b)    Dismissal of Illinois Action; Release of HOI Released Parties.  On the

Release Effective Date, Agent agrees to cause the action entitled

*Madison Capital Funding LLC v. Home Organizers Inc., CBD*

*Franchising Inc, Home Closets, Inc., et al.*, currently pending in the

Circuit Court of Cook County, Illinois, as Case No. 10CH10531 (the

"Illinois Action"), to be dismissed with prejudice. The automatic stay

imposed by Code § 362 shall be deemed lifted in each of the Debtor's

cases to enable Madison to continue, without prejudice, the Illinois

Action from time to time until the Release Effective Date.  In addition

to, and not in limitation of, the foregoing, on the Release Effective Date

Agent and Lenders hereby release Melkonian, the Debtors and their

respective affiliates and subsidiaries and their respective officers,

directors, employees, shareholders, advisors, consultants, attorneys,

agents and representatives as well as their respective predecessors,

successors and assigns (the "HOI Released Parties") from any and all

claims, counterclaims, rights of offset, obligations, rights, causes of

action, and liabilities, of whatever kind or nature, whether known or

unknown, whether foreseen or unforeseen, arising on or before the date

hereof, which Agent or Lenders ever had, now has or hereafter can, shall

or may have for, upon or by reason of any matter, cause or thing

-15-

whatsoever, which are based upon, arise under or are related to the Illinois Action; provided, however, that nothing contained in this Paragraph 9(b) shall be deemed to constitute a release by any Madison Released Party of (x) any HOI Released Party in connection with such party's obligations under or related to the Prepetition Documents, or (y) any claim or cause of action to the extent based upon fraud; and provided further, that nothing herein shall constitute a release of any claim or cause of action that any of the Madison Released Parties could assert against any of the HOI Released Parties if and to the extent any of the SKM entities assert any claims against any of the Madison Released Parties.  Prior to the occurrence of the Board Replacement Date, the Madison Released Parties covenant not to commence any claim or cause of action against any of the HOI Released Parties or otherwise prosecute the Illinois Action (except to the extent necessary to preserve any statute of limitations or other pleading deadline, including any pleading necessary to avoid dismissal for want of prosecution).  For purposes hereof, the "Release Effective Date" means the later of the date this Order becomes a final, non-appealable order or the date all Prepetition Debt has been paid in full in cash.

(c)    Subject to Paragraph 8, the parties described in subparagraphs (a) and (b) above shall, contemporaneously with the entry of this Order, execute and deliver to each other a reaffirmation and release agreement, in form and substance reasonably satisfactory to Agent and incorporating the terms of the reaffirmation and release provisions of Paragraphs 7 and 8 hereof, and including the reaffirmation to such other Loan Documents to which the Debtors and/or Melkonian are a party.

1

2    Dated: _____, 2010
     Los Angeles, California                    Hon. Richard M. Neiter
3                                               United States Bankruptcy Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| In re:  HOME ORGANIZERS, INC., a Delaware corporation, HOME CLOSETS, INC., a California corporation, CBD FRANCHISING, INC., a California corporation, CLOSETS BY DESIGN, INC., a California corporation, CLOSET WORLD, INC., a Delaware corporation, CLOSET DIMENSIONS, INC., a California corporation, CBD LAS VEGAS LLC, a Nevada limited liability company, and CLOSET WORLD ARIZONA, LLC, a Nevada limited liability company,<br><br>Debtor(s). | Chapter 11<br><br>Case No.: 2:10-19762-RN<br><br>(Jointly Administered with Case Nos.:<br>2:10-19972-RN, 2:10-19973-RN, 2:10-19974-RN,<br>2:10-19975-RN, 2:10-19976-RN, 2:10-19977-RN<br>and 2:10-19978-RN) |
| --- | --- |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Peitzman, Weg & Kempinsky, LLP

10100 Santa Monica Blvd., Suite 1450

Los Angeles, CA  90067

The foregoing document described **Notice of Motion and Motion for Order Approving Compromise and Settlement of: (I) Motions to Dismiss the Cases of the Debtors Other Than Home Organizers, Inc.; (II) Motion for Relief From the Automatic Stay in the Case of Home Organizers, Inc.; and (III) Motion of Home Organizers, Inc. for a TRO and Injunctions; Memorandum of Points and Authorities**, will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 12, 2010**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Paul S Arrow     parrow@buchalter.com, ifs_filing@buchalter.com
- Korin A Avelino     kelliott@ktbslaw.com
- Russell Clementson     russell.clementson@usdoj.gov
- Scott F Gautier     sgautier@pwkllp.com
- Julian I Gurule     jgurule@pwkllp.com, jkeith@pwkllp.com
- Monserrat Morales     mmorales@pwkllp.com
- David L. Neale     dln@lnbrb.com
- Christopher S Reeder     creeder@reederlugreen.com
- Benjamin Seigel     bseigel@buchalter.com, IFS_filing@buchalter.com
- David B Shemano     dshemano@pwkllp.com
- United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov
- Kimberly S Winick     kwinick@clarktrev.com
- Beth Ann R Young     bry@lnbrb.com

☐  Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                     **F 9021-1.1**

| | |
|---|---|
| In re:  HOME ORGANIZERS, INC., a Delaware corporation, HOME CLOSETS, INC., a California corporation, CBD FRANCHISING, INC., a California corporation, CLOSETS BY DESIGN, INC., a California corporation, CLOSET WORLD, INC., a Delaware corporation, CLOSET DIMENSIONS, INC., a California corporation, CBD LAS VEGAS LLC, a Nevada limited liability company, and CLOSET WORLD ARIZONA, LLC, a Nevada limited liability company,<br><br>Debtor(s). | Chapter 11<br><br>Case No.: 2:10-19762-RN<br><br>(Jointly Administered with Case Nos.: 2:10-19972-RN, 2:10-19973-RN, 2:10-19974-RN, 2:10-19975-RN, 2:10-19976-RN, 2:10-19977-RN and 2:10-19978-RN) |

**II.    SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **April 12, 2010**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

**Served by U.S. Mail:**

Honorable Richard M. Neiter

United States Bankruptcy Court – Central District of California

Edward R. Roybal Federal Building and Courthouse

255 E. Temple Street, Suite 1652

Los Angeles, CA 90012

☒  Service information continued on attached page

**III.    SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **April 12, 2010,** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

**Served by Electronic Mail:**

**Counsel for Madison Capital Funding LLP**

Randall L. Klein, Esq.

randall.klein@goldbergkohn.com

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 12, 2010 | Matthew M. Dryer | /s/  Matthew M. Dryer |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re:  HOME ORGANIZERS, INC., a Delaware corporation, HOME CLOSETS, INC., a California corporation, CBD FRANCHISING, INC., a California corporation, CLOSETS BY DESIGN, INC., a California corporation, CLOSET WORLD, INC., a Delaware corporation, CLOSET DIMENSIONS, INC., a California corporation, CBD LAS VEGAS LLC, a Nevada limited liability company, and CLOSET WORLD ARIZONA, LLC, a Nevada limited liability company, <br><br> Debtor(s). | Chapter 11 <br><br> Case No.: 2:10-19762-RN <br><br> (Jointly Administered with Case Nos.: 2:10-19972-RN, 2:10-19973-RN, 2:10-19974-RN, 2:10-19975-RN, 2:10-19976-RN, 2:10-19977-RN and 2:10-19978-RN) |
|---|---|

## Additional Service List (all by U.S. Mail):

M&I Equipment Finance Co
250 East Wisconson Avenue
Suite 1400
Milwaukee, WI 53202-4219

Cypress Insurance Company
PO Box 881236
San Francisco, CA 94188

Redwood Fire and Cas Ins Co
751 Daily Drive Ste 230
Camarillo, CA 93010

City of Palm Springs
Business License
PO Box 2743
Palm Springs, CA 92263

Prudential Overall Supply
PO Box 11210
Santa Ana, CA 92711-1210

Colorado Muffler & Auto Repair
2155 East Colorado Blvd
Unit 7
Pasadena, CA 91107

Oil Changer Inc.
4511 Willow Rd
Suite 1
Pleasanton, CA 94588

Airgas NCN
PO Box 7425
Pasadena, CA 91109-7425

Action Marketing LLC
5301 Beethoven St
Suite 295
Los Angeles, CA 90066

Berry Network
PO Box 71090
Cincinnati, OH 45271-0909

Dynamic Courier Service Inc.
635 W Colorado St
Suite 201
Glendale, CA 91204

Verizon California
PO Box 9650
Mission Hills, CA 91346

Fleetwash, Inc.
PO Box 36014
Newark, NJ 07188-6014

First Choice
580 West Cheyenne Ave Unit 90
North Las Vegas, NV 89030

Val-Pak Direct Marketing
PO Box 945889
Atlanta, GA 30394-5889

City of Industry
PO Box 3366
City of Industry, CA 91744

First Choice Services
7373 Flores St
Downey, CA 90242-0211

Google, Inc.
Dept 33654
PO Box 39000
San Francisco, CA 94139

PG Telecom Holdings Inc.
30251 Golden Lantern
Suite E PMB 508
Laguna Niguel, CA 92677

Softline Solutions LLC
3917 Fountain Ave
Los Angeles, CA 90029

CenturyLink
PO Box 660068
Dallas, TX 75266-0068

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9021-1.1**

In re:  HOME ORGANIZERS, INC., a Delaware corporation, HOME CLOSETS, INC., a California corporation, CBD FRANCHISING, INC., a California corporation, CLOSETS BY DESIGN, INC., a California corporation, CLOSET WORLD, INC., a Delaware corporation, CLOSET DIMENSIONS, INC., a California corporation, CBD LAS VEGAS LLC, a Nevada limited liability company, and CLOSET WORLD ARIZONA, LLC, a Nevada limited liability company,

Debtor(s).

Chapter 11

Case No.: 2:10-19762-RN

(Jointly Administered with Case Nos.: 2:10-19972-RN, 2:10-19973-RN, 2:10-19974-RN, 2:10-19975-RN, 2:10-19976-RN, 2:10-19977-RN and 2:10-19978-RN)

Deluxe Business Forms
PO Box 742572
Cincinnati, OH 45274-2572

CAMS
5165 Rousso Rd Ste E
Las Vegas, NV 89118

Law Office of Don M. Drysdale
3501 Jamboree Road Suite 6000
Newport Beach, CA 92660-

Meyer & Son
4019 Medford Street
Los Angeles, CA 90063

Money Mailer
12131 Western Ave
Garden Grove, CA 92841

Minnesota State Treasurer
85 7th Place East Suite 500
Saint Paul, MN 55101

Prestige Property Services Inc.
PO Box 53275
Irvine, CA 92619-3275

Sir Speedy Printing
7240 Greenleaf Ave
Whittier, CA 90602

State of Illinois
500 S 2nd St
Springfield, IL 62701

MatchPoint Network107
Woodbine Downs Blvd Suite Unit 12
Toronto, ON M9W6Y1

Q-Ponz
125 Nashdene Rd Unit 1
Scarborough, ON M1V 2W3

American Renolit Corporation
PO Box 5805
Carol Stream, IL 60197-5805

Contractors Wardrobe
26121 Avenue Hall
Valencia, CA 91355

D.H. Maintenance Services
Attn George Wallis
2320 Back Nine Street
Oceanside, CA 92056-1701

Day & Nite Forklift Co.
12135 Clarke St
Santa Fe Springs, CA 90670

Hafele America, Co.
PO Box 75352
Charlotte, NC 28275

Los Angeles County Tax
PO Box 54018
Los Angeles, CA 90054-0018

Louis and Company
P O Box 2253
Brea, CA 92822-2253

Penny Saver
Dept 6082
Los Angeles, CA 90088-6082

Stiles Machinery, Inc.
NW 6027
PO Box 1450
Minneapolis, MN 55485-6027

ADP, Inc.
PO Box 0500
Carol Stream, IL 60132-0500

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9021-1.1

In re:  HOME ORGANIZERS, INC., a Delaware corporation, HOME CLOSETS, INC., a California corporation, CBD FRANCHISING, INC., a California corporation, CLOSETS BY DESIGN, INC., a California corporation, CLOSET WORLD, INC., a Delaware corporation, CLOSET DIMENSIONS, INC., a California corporation, CBD LAS VEGAS LLC, a Nevada limited liability company, and CLOSET WORLD ARIZONA, LLC, a Nevada limited liability company,

Debtor(s).

Chapter 11

Case No.: 2:10-19762-RN

(Jointly Administered with Case Nos.: 2:10-19972-RN, 2:10-19973-RN, 2:10-19974-RN, 2:10-19975-RN, 2:10-19976-RN, 2:10-19977-RN and 2:10-19978-RN)

American Guard Services, Inc.
PO Box 80026
City Of Industry, CA 91716

Calsak Plastics
15325 Fairfield Ranch Road,
Suite 150
Chino Hills, CA 91709

T-Mobile
PO Box 51843
Los Angeles, CA 90051-6143

Roly's Trucking
13645 Live Oak Lane
Irwindale, CA 91706

Standard Saw Works, Inc.
181 10th Street
Oakland, CA 94607

Town & Country
2570 San Ramon Valley Blvd
Suite A102
San Ramon, CA 94583

Tom Unthank
2807 Purissima Creek Rd
Half Moon Bay, CA 94019

City of Belmont
PO Box 9003
Redwood City, CA 94065-9003

Enterprise Rent a Car Oakland
PO Box 402383
Atlanta, GA 30384-2383

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                    **F 9021-1.1**